UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------

THRIVENT FINANCIAL FOR LUTHERANS
and THRIVENT INVESTMENT
MANAGEMENT INC.,                                       :   16cv5137

           Petitioners,                            :   OPINION & ORDER

           -against-                                   :

CHRISTOPHER W. BIBOW,                                  :

           Respondent.                             :

------------------------------------------------------------

WILLIAM H. PAULEY III, District Judge:

        Petitioners Thrivent Financial for Lutherans and Thrivent Investment Management Inc. (collectively, "Thrivent") seek confirmation of a Financial Industry Regulatory Authority, Inc. ("FINRA") arbitration award (the "Award").  The Award rejected Respondent Christopher Bibow's claims and recommended expungement of the reasons for his termination on the Form U-5.  Bibow seeks vacatur of the the Award, except that he, too, seeks confirmation of the expungement.[1]  For the reasons that follow, Thrivent's motion is granted, Bibow's motion is granted in part and denied in part, and the Award is confirmed.

## BACKGROUND

        Thrivent offers insurance and securities through independent contractors referred to as Financial Representatives.  Bibow was a Thrivent Financial Representative in 2013 and 2014.  (Petition to Confirm Arbitration Award ("Pet."), ECF No. 1, ¶ 7.)

---

[1] Bibow initially challenged the assessment of hearing fees, but that claim has been withdrawn.  (See ECF No. 47.)

-1-

Thrivent's Registered Representative Agreement ("Agreement") provided that the agreement may be terminated "upon notice by either Party at any time if the other Party has breached th[e] Agreement. . . . Breaches of th[e] Agreement included . . . Representative's failure to comply with the company's rules, regulations, policies, practices, procedures, standards or instructions." (Rhoads Decl., ECF No. 26, Ex. C., at 3.)[2]  The Agreement also provided that "[a]ny dispute between [Thrivent and Bibow] must be arbitrated and will be subject to the provisions of the FINRA Code of Arbitration Procedure." (Rhoads Decl., Ex. C, at 6.)

During his tenure as a Financial Representative, Bibow failed to comply with a number of Thrivent's policies and procedures. (See 2d Trevor Decl., ECF No. 38, Exs. 7–18, 24–27.)  In August 2014, Bibow engaged in unauthorized activities at two Thrivent-sponsored music festivals. (Rhoads Decl., Ex. I, at 6.) As a result, Thrivent terminated Bibow as a Financial Representative. ((Pet. ¶ 8; 2d Trevor Decl., Ex. 19 at 2:10–3:17, 114:4–120:24, 122:18–132:2, 193:6–194:10.) The Form U-5 filed in connection with Bibow's termination listed the cause as "failure to follow instructions relating to Thrivent sponsored events." (Bibow Decl., ECF No. 19, at ¶ 2.)

In December 2014, Bibow initiated a FINRA arbitration seeking to arbitrate "all issues relating to [Thrivent's] relationship to him." Ultimately, his amended petition included twenty different claims.[3]  (Pet., Ex. B.)  The parties selected their arbitrators pursuant to the FINRA rules,[4] and engaged in extensive discovery.  (Pet. ¶ 19; Trevor Decl., ¶¶ 2–5, Exs. 1–2.) Bibow submitted 59 information requests and 123 document requests. (Trevor Decl. (ECF No.

---

[2] Although Bibow signed a separate agreement with each entity, the Agreements were substantially similar. (Compare Rhoads Decl., Ex. C with Ex. D.)
[3] Bibow also filed a lawsuit in this District that was stayed pending resolution of the FINRA arbitration. See Bibow v. Thrivent Financial for Lutherans, et ano., 14-CV-09843 (LAK).
[4] One of the three arbitrators had to withdraw due to health issues. The parties agreed to proceed with the remaining two arbitrators. (Pet., Ex. D, at 3.)

16), ¶ 3.)  Thrivent interposed objections and responses, some of which were resolved by the arbitration panel.  (Trevor Decl., ¶¶ 6–10.)  By the close of discovery, Thrivent had produced over 20,000 documents.  (Trevor Decl., ¶ 4.)  The Hearing spanned sixteen days, included twenty-two witnesses, and more than 400 exhibits.  (Trevor Decl., ¶¶ 12–14.)  Given the voluminous arbitration record, the parties agreed that they would publicly submit only the materials pertinent to these motions, filing the remainder under seal.  (See ECF Nos. 27, 36.)

In June 2016, the panel issued a standard award—bereft of findings of facts or conclusions of law.  The Award determined that Bibow's "claims are denied in their entirety." (Pet., Ex. D, at 4.)  The panel also "recommend[ed] the expungement of the current reason for termination on the Form U5" and that the reason be changed to "terminated for internal reasons unrelated to the sale of securities or insurance."  (Pet. Ex. D, at 4.)  The panel concluded that "[a]ny and all relief not specifically addressed herein, including punitive damages is denied." (Pet. Ex. D., at 4.)

## LEGAL STANDARD

Arbitration awards "are not self-enforcing, [so] they must be given force and effect by being converted to judicial orders by courts; these orders can confirm and/or vacate the award, either in whole or in part."  D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 104 (2d Cir. 2006) (citation omitted); Ceona PTE Ltd. v. Bmt Giant, S.A. De C.V., No. 16-CV-4437 (WHP), 2016 WL 6094126, at *1 (S.D.N.Y. Oct. 19, 2016).  "[J]udicial review of an arbitration award is narrowly limited."  Barbier v. Shearson Lehman Hutton Inc., 948 F.2d 117, 120 (2d Cir. 1991). An "arbitrator's decision is entitled to substantial deference," Yusuf Ahmed Alghanim & Sons v. Toys 'R' Us, Inc., 126 F.3d 15, 23 (2d Cir. 1997), and "a court is [generally] required to enforce the arbitration award as long as there is a barely colorable justification for the outcome reached."

Leeward Constr. Co., Ltd. v. Am. Univ. of Antigua–Coll. of Med., 826 F.3d 634, 638 (2d Cir. 2016) (internal quotation marks omitted). "The arbitrator's rationale for an award need not be explained, and the award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (internal quotation marks omitted). Thus, a court's authority to vacate an arbitration award is limited.

Courts are required to grant a petition to confirm an arbitration award "unless the award is vacated, modified, or corrected as prescribed in [9 U.S.C. §§ 10 and 11]." 9 U.S.C. § 9. Those statutory grounds for vacatur are:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made.

9 U.S.C. § 10(a).

In addition, a court may overturn an award where there has been a "manifest disregard of the law." Benihana, Inc. v. Benihana of Tokyo, LLC, No. 15-CV-7428 (PAE), 2016 WL 3913599, at *10 (S.D.N.Y. July 15, 2016). "[T]he manifest disregard standard, rather than substantially broadening the grounds for vacatur, largely operates 'as a judicial gloss on the specific grounds for vacatur enumerated in section 10 of the FAA.'" Benihana, 2016 WL 3913599, at *10 (quoting Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp., 548 F.3d 85, 91 (2d Cir. 2008), rev'd and remanded on other grounds, 559 U.S. 662 (2010)). "Vacatur of an arbitral award for manifest disregard of the law 'is a doctrine of last resort,' reserved for 'those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent but where none of the provisions of the FAA apply.'" Benihana, 2016 WL 3913599, at

\*10 (quoting <u>Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S</u>, 333 F.3d 383, 389 (2d Cir. 2003)).  Manifest disregard applies where: "(1) 'the law that was allegedly ignored was clear, and in fact explicitly applicable to the matter before the arbitrators,' (2) 'the law was in fact improperly applied, leading to an erroneous outcome,' and (3) 'the arbitrator ... kn[ew] of its existence, and its applicability to the problem before him.'" <u>Benihana</u>, 2016 WL 3913599, at \*10 (quoting <u>Duferco</u>, 333 F.3d at 390).

## DISCUSSION

While Bibow agrees with that portion of the Award recommending expungement and correction of his Form U-5, he contends that the remainder of the Award is inconsistent with expungement.  Specifically, he argues that the corrected language demonstrates that the original language was false and therefore supports his defamation claim.  He also asserts that the corrected language does not satisfy any explicit provision for termination under the Agreement and therefore supports his breach of contract claim.  But "whatever the weight of the evidence considered as a whole, if a ground for the arbitrator's decision can be inferred from the facts of the case, the award should be confirmed."  <u>Wallace v. Buttar</u>, 378 F.3d 182, 193 (2d Cir. 2004) (internal quotation marks omitted).  Here, a colorable justification for the Award can be inferred.

Although expungement of customer-related disputes requires a finding of falsity, the same rule does not apply to intra-industry disputes. (<u>See</u> 2d Trevor Decl., Ex. 28, at 3; FINRA Rule 2080(b)(1)(C).)  As the Award made no finding of falsity (Pet. Ex. D, at 4), the panel may have determined that the Form U-5 should be modified to reflect the many complaints about Bibow during his tenure.  The new language—"internal reasons unrelated to the sale of securities or insurance"— encompasses the old—"failure to follow instructions relating to

Thrivent sponsored events"—and also accounts for the prior pattern of behavior. (Pet. Ex. D, at 4.)

Under this rationale, the Award is not inconsistent with the denial of the defamation or breach of contract claims. Without a finding of falsity, the Award only reflects the inference that the panel viewed the original Form U-5 as too narrow in scope. In fact, if a panel determines that a Form U-5 is defamatory, it must "clearly state" that it recommends expungement based on defamation, in which case "FINRA will expunge the information <u>without</u> a court order." (See 2d Trevor Decl., Ex. 28, at 3 (emphasis added)). But here, the panel made no finding of defamation and expressly noted that a court order was required for expungement. Further, the "internal reasons" reflect Bibow's failures to adhere to Thrivent's "policies, practices, procedures, standards or instructions," which supports the denial of his breach of contract claim. (See Rhoads Decl. (ECF No. 26), Ex. C., at 3.)

Bibow contends that the revised language should be interpreted to shift the entire reason for his termination to Thrivent because it was for "internal reasons." In advancing this argument, Bibow relies entirely on guidance from FINRA's Form U-5 Regulatory Notice. That notice advises that "[a] firm must provide sufficient detail when responding to Form U-5 questions such that a reasonable person may understand the circumstances that triggered the affirmative response. . . . [For example,] it is not sufficient for a firm to report only that a person's registration was terminated because that person violated "firm policy." (Rhoads Decl., Ex. K, at 2.) The rationale is that

> FINRA uses the information to help identify and sanction individuals who violate FINRA rules and applicable federal statutes and regulations. FINRA, other self-regulatory organizations and state regulatory and licensing authorities also use the information to make informed registration and licensing decisions. Firms use the information to help them make informed employment decisions. Further, investors use the Form U5 information that is displayed through BrokerCheck when

-6-

considering whether to do business with a registered (or formerly registered) person.

(Rhoads Decl., Ex. K, at 1.)

By attempting to draw inferences in his favor, Bibow misconstrues the standard of review. "[T]he award should be confirmed if a ground for the arbitrator's decision can be inferred from the facts of the case." D.H. Blair, 462 F.3d at 110 (internal quotation marks omitted); Bear, Stearns & Co., Bear, Stearns Sec. Corp. v. 1109580 Ontario, Inc., 409 F.3d 87, 91 (2d Cir. 2005) (holding that courts must confirm arbitration awards if there is "any basis for upholding the decision."). The panel could have plausibly believed that many of FINRA's rationales did not apply because Bibow's termination was "unrelated to the sale of securities." Moreover, this is not one of "those exceedingly rare instances where some egregious impropriety on the part of the arbitrator is apparent." T. Co Metals, LLC v. Dempsey Pipe & Supply, Inc., 592 F.3d 329, 339 (2d Cir. 2010).

## CONCLUSION

For the foregoing reasons, Petititoners' motion to confirm the arbitration award is granted and Respondent's motion is granted in part and denied in part. The Clerk of Court is directed to terminate all pending motions and mark this case as closed.

Dated: March 28, 2017
       New York, New York

SO ORDERED:

_____
WILLIAM H. PAULEY III
U.S.D.J.